**INDUSTRIAL TECTONICS BEARINGS CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–767.**

United States Court of Federal Claims.

June 30, 1999.

Peter Best Jones, Newport Beach, California, for plaintiff.

Brian M. Simkin, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Kathryn A. Bleecker, Assistant Director, U.S. Depart-ment of Justice, Washington, D.C., for defendant. Wayne G. Carter, Jr. and Capt. Steven J. Mulligan, Office of Counsel, Defense Logistics Agency, Santa Ana, California, of counsel.

## OPINION AND ORDER

HEWITT, Judge.

This case is before the court on Plaintiff's Motion for Summary Judgment of Entitlement and Defendant's Cross–Motion for Summary Judgment. Plaintiff claims that it is entitled to recover its incurred costs for work-in-process inventory in a termination for convenience settlement. Defendant argues that plaintiff/contractor's disposal of its inventory of work-in-process without the government's permission bars recovery by the contractor of its incurred costs. For the following reasons, plaintiff's motion is GRANTED in part and otherwise DENIED. The defendant's motion is DENIED.[1]

### I. Background

Plaintiff, Industrial Tectonics Bearings Corporation ("ITB" or "plaintiff") manufactures bearings and related products, including bearing retainers. ITB entered into a contract with the government (sometimes also referred to as "defendant" or "the Navy") in January 1989 to produce, among other items, three types of steel bearing retainers. Defendant's Proposed Findings of Uncontroverted Fact ("Def.'s Facts") No. 1;

---

1. The government's cross-motion is DENIED on the merits to the extent it addresses "the legal question of whether a contractor terminated for convenience can recover costs after it has disposed of the termination inventory without the government's permission" and is otherwise DENIED without prejudice to the reassertion of other matters. *See* Order of this court filed March 25, 1998. In order "to keep expenses to a minimum," the court's March 25, 1998 Order focused the parties on the issue of the contractor's treatment of termination inventory. Nevertheless, the government, in its Opposition to Plaintiff's Motion for Summary Judgment of Entitlement and Defendant's Cross–Motion for Summary Judgment ("Def.'s Opp."), introduced a theory which does not, in the court's view, fall fairly within the parameters provided to the parties by the court in the March 25, 1998 Order. In particular, the government urges that plaintiff's claim is barred because plaintiff "failed to

comply with the express conditions of the Termination for Convenience clause regarding the submission and content of its settlement proposal." Def.'s Opp. at 18. Plaintiff objected that the government had offered a "new factual and legal argument" beyond the scope of the court's Order of March 25, 1998. Plaintiff's Reply to Opposition to Motion for Summary Judgment (and Opposition to Cross–Motion for Summary Judgment) ("Pl.'s Reply") at 1–2. The court agrees. The court's Order of March 25, 1998 also noted its belief "that the case is particularly suitable for settlement." That continues to be the view of the court. If, however, the parties are still unable to achieve settlement after considering the court's views expressed in this opinion, the court's decision today does not bar defendant's assertion of matters beyond the scope of the court's March 25, 1998 Order in a dispositive motion or otherwise.

Plaintiff's Proposed Findings of Uncontroverted Facts ("Pl.'s Facts") No. 1; *see also* Defendant's Statement of Genuine Issues ("Def.'s Issues") No. 1; Plaintiff's Statement of Genuine Issues ("Pl.'s Issues") No. 2. The contract was partially terminated by the government in May of 1991 as to two of the three types of steel bearing retainers pursuant to a Termination for Convenience clause in the contract. Def.'s Facts No. 2; Pl.'s Facts No. 2. The validity of the termination itself is not at issue. This dispute arises out of the alleged failure of the contractor to discharge its responsibilities under a valid termination.

The contracting officer, pursuant to FAR regulations, issued Modification P00005 (the "Modification") to inform ITB of its post-termination responsibilities. Def.'s Facts No. 3. Plaintiff disputes the government's characterization of Modification P00005 (Pl.'s Issues No. 3), particularly that the Modification "clearly delineat[ed] ITB's responsibilities for its inventory." Def.'s Facts No. 3. Subsection (c) of the Modification, entitled "Termination Inventory," contained the following directions:

(1) As instructed by the Contracting Officer, transfer title and deliver to the Government all termination inventory of the following types or classes, including subcontractor termination inventory that you have the right to take: *NONE*[2]

(Contracting officer insert proper identification above or "None")

(2) To settle your proposal, it will be necessary to establish that all prime and subcontractor termination inventory has been properly accounted for. For detailed information, see FAR 45.

Exh. 2 to Declaration of Judy Frilando ("Frilando Decl."), Appendix ("App.") to Def.'s Opp. at 14.

There are several factual disputes regarding the resulting settlement discussions between ITB and the termination contracting

officer (TCO). Nonetheless, the only factual issue relevant to Plaintiff's Motion for Summary Judgment of Entitlement is the status of the work-in-process inventory.

The status of the work-in-process inventory first became an issue when during the plant clearance officer's inspection, ITB could not locate the inventory.[3] Def.'s Facts No. 14. According to ITB, its employees threw the inventory away as scrap. Pl.'s Facts No. 12. The government does not dispute that the inventory was "lost or discarded." Def.'s Issues No. 12. The government also notes that the inventory was discarded without the government's approval as required by Part 45 of the FAR. Def.'s Facts No. 8.

On March 30, 1994, the TCO issued a unilateral determination denying all the amounts ITB had claimed as incurred costs for work-in-process. Def.'s Facts No. 17; Pl.'s Issues No. 17. The TCO's determination letter gave the following reasons for the denial:

The modification notified ITI[4] that to settle its proposal, it would be necessary to establish that all termination inventory had been properly accounted for in accordance with FAR Part 45. FAR § 45.603 states that the government may require delivery of any contractor inventory.... Although ITI's invoices support expenditures in the amount of $52,469 for material and tooling, the inventory to substantiate these expenditures as allocable to the terminated portion of the contract could not be located. FAR § 49.204 requires that the fair value of termination inventory that is destroyed, lost, or stolen prior to delivery to the government be deducted from the amount payable in the termination settlement. The Armed Services Board of Contract Appeals has held that a contractor is not entitled to compensation for materials purchased for use on a contract that was terminated for convenience when the mate-

---

2. The Modification was submitted to the contractor with the word "NONE" typed in after subsection (1) under the "Termination Inventory" subsection.

3. There is disagreement as to whether or not ITB employees offered an explanation for the missing

inventory at the time of the inspection. Def.'s Facts No. 14; Pl.'s Issues No. 14.

4. In correspondence between the parties filed with the court, Industrial Tectonics Bearings Corporation (ITB) was previously referred to as Industrial Tectonics Incorporated ("ITI").

rials could not be located. *Acme Coppersmithing & Machine Co.,* 4473, 5017, 59–1 B.C.A. (CCH) 2136, 59–2 B.C.A. (CCH) 2314 (1959).

Exh. 14 to Frilando Decl., App. to Def.'s Opp. at 110.

In January 1995, ITB requested that its October 4, 1991 termination settlement proposal be converted into a claim under the Contract Disputes Act. Def.'s Facts No. 18; Pl.'s Issues No. 18.

Around August 1995, the Defense Contract Audit Agency (DCAA) conducted an audit of ITB's termination settlement proposal. Pl.'s Facts No. 15; Def.'s Issues No. 15. The DCAA reported that ITB's incurred costs of performing the terminated work totaled $215,970. Pl.'s Facts No. 16; Def.'s Issues No. 16. The audit report took exception to $4,275 of ITB's proposed settlement of $95,-475 and verified that the total of ITB's costs minus loss adjustment was $91,182. The DCAA qualified ITB's entire report "because all the physical inventory items are missing." *Id.*

On March 10, 1997, the TCO issued a final decision on the claim, allowing $3,644 in settlement expenses but otherwise denying all costs incurred. Exh. 16 to Frilando Decl., App. to Def.'s Opp. at 116. The final decision contained the following explanation of the denial of work-in-process costs:

Discussion of Final Decision:

a. Work–in–Process: The proposed costs for this expense are disallowed in totality on the basis that the Contractor failed to comply with the termination modification P00005 dated 1 May 1991 which notified ITB that it would be necessary to establish that all termination inventory had been properly accounted for in accordance with FAR Part 45. FAR § 45.603 states that the Government may require the delivery of any contractor inventory.

FAR § 49.204 requires that the fair value of termination inventory that is destroyed, lost, or stolen prior to delivery to the government be deducted from the amount payable to the termination settlement.

b. Other Costs: These costs are disallowed on the basis that this expenditure is directly related to the Work–in–Process expense. Without support for the Work–in–Process, it is impossible to support the proposed Other Costs.

Exh. 16 to Frilando Decl., App. to Def.'s Opp. at 117.[5]

## II. Discussion

### A. Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." RCFC 56(c); *Southfork Systems, Inc. v. United States,* 141 F.3d 1124 (Fed.Cir.1998) (quoting RCFC 56(c)). A genuine dispute concerning a material fact exists when the evidence presented would permit a reasonable jury to find in favor of the non-movant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is not the role of this court to determine the truth of disputed facts or to weigh the evidence on a motion for summary judgment. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. "The evidence of the non-movant is to be believed, and all justified inferences are to be drawn in his favor." *Id.*

In the narrow scope of Plaintiff's Motion for Summary Judgment of Entitlement, the only factual issue that is material is the fate of the work-in-process inventory. Because both parties agree that the work-in-process inventory was either "lost or discarded" (Def.'s Issues No.12), the remaining dispute on the relevant law is appropriate for summary judgment.

5. An additional justification for the denial of all costs based on the defective submission of settlement proposals, though not specifically relied upon by the TCO, was explained by the government in its Opposition to Plaintiff's Motion for Summary Judgment of Entitlement. Def.'s Opp. at 14. The government argues that the failure to account for termination inventory in accordance with the settlement proposal requirements of the Termination for Convenience Clause, bars recovery under the contract. Def.'s Opp. at 11. *See* FAR § 45.606–1, and 45.606–5–2. We do not consider that argument in this decision. *See* n. 1 *supra.*

B.  Fair Value of Missing Inventory

Missing termination inventory is not uncommon in supply contracts. There are two FAR provisions on the subject.  The Termination for Convenience clause itself provides:

> Except for normal spoilage, and except to the extent that the Government expressly assumed the risk of loss, the Contracting Officer shall exclude from the amounts payable to the Contractor under paragraph (f) above, the fair value, as determined by the Contracting Officer, of property that is destroyed, lost, stolen, or damaged so as to become undeliverable to the Government or to a buyer.

FAR § 52.249–2(h).  The FAR also provides that the amount payable to the contractor under a settlement shall be reduced by:

> [t]he fair value, as determined by the TCO, of any part of the termination inventory that, before transfer of title to the Government or to a buyer under part 45, is destroyed, lost, stolen, or so damaged as to become undeliverable. . . .

FAR § 49.204(b).

These FAR provisions make clear the loss of inventory generally results in the deduction of its "fair value" from the entire cost figure payable to the contractor.  At issue here is the meaning of "fair value."

According to the government, the "fair value" of undelivered inventory, is the amount sought by the contractor for reimbursement in the settlement proposal.  Def's Opp. at 19.  Consequently, the amount that should be deducted, i.e., the "fair value," is equal to ITB's full claim in its settlement proposal.  Def.'s Opp. at 21.  The government argues that, because the Termination for Convenience clause places the risk of loss of termination inventory upon the contractor, it is not enough for the contractor to prove that it has incurred costs.  *Id.* The contractor must deliver the work-in-process in order to be reimbursed for its costs.  *Id.*

In contrast, ITB argues that the term "fair value" has consistently been interpreted to mean "fair market value."  Pl.'s Memorandum of Points and Authorities in support of Pl.'s M.S.J. at 5. ITB finds support for a "fair market value" rule in governing principles of cost reimbursement and "the general principle that the contractor should be compensated fairly for the work terminated," articulated by this court in *Best Foam Fabricators, Inc. v. United States*, 38 Fed.Cl. 627, 638 (1997) (setting out the cost reimbursement principles that control when the government terminates for convenience).  *See also Bolinders Co.*, ASBCA No. 5740, 60–2 B.C.A. (CCH) ¶ 2746 (1960) (explaining the judicial preference for the "fair value" rule over barring all costs relating to the missing inventory).

The key case in support of the government's view is the 1960 Armed Services Board of Contract Appeals case cited by the TCO. *Atlas Can Corp.*, ASBCA No. 3381, 60–1 B.C.A. (CCH) (1960); Def.'s Opp. at 19. With no discussion, the Board in *Atlas* denied all costs and reasonable profit related to the cost of inventory because the loss was not the result of normal spoilage, nor had the Government assumed the risk of loss.  *Atlas Can Corp.*, ASBCA No. 3381, 60–1 B.C.A. ¶ 2651.  It held, citing earlier Board opinions, that "to the extent that the claim includes amounts for undeliverable inventory it must be, and is disallowed."  *Id.* The difficulty with the *Atlas* precedent is that the Board, without explanation, declined to use what, by that time, had become the "universally accepted" approach to the reimbursement of contractors when termination inventory was missing.  *See Bolinders Co.*, ASBCA No. 5740, 60–2 B.C.A. (CCH) ¶ 2746 (1960).

In *Bolinders*, the Board decided that the "fair value" was equivalent to the amount claimed in the settlement proposal.  *See id.* This case appears to support the government's position regarding the definition of fair value.  However, the *Bolinders* court justified its decision on evidence that caused it to question the good faith of contractor's claim that the termination inventory was missing.  *See id.* The Board "suspect[ed] that a valuable portion of the missing inventory was in fact used in normal production." *Id.* In the Board's view, disallowing the costs and related profit on the missing inventory was the only "fair result." *Id.* The Board recognized that the deduction of fair market value rather than related costs would have

been in line with what at the time was the method of "universal acceptance." *Id.* However, it found that in light of the suspected fate of the inventory, to allow the contractor to recover any amount could result in a double recovery for the contractor. *See id.*

Unlike the contractor in *Bolinders,* there is no suggestion that ITB has in any way profited from the sale of or use of the termination inventory. In fact, the fate of the termination inventory is not in dispute. ITB employees threw it away. Pl.'s Facts No. 12, Def.'s Issues No. 12.

Similarly, the government's reliance on *Lisbon Contractors, Inc. v. U.S.,* 828 F.2d 759 (Fed.Cir.1987) is misplaced. The government argues that *Lisbon* is relevant for its position that proof of incurred costs is not in itself enough to justify reimbursement for those costs when the contractor bears the risk of loss. *See id.;* Def.'s Opp. at 21. In *Lisbon,* however, the contractor offered no evidence to explain what happened to the materials claimed in the settlement proposal to have been purchased for the job. *See Lisbon,* 828 F.2d at 768. The Federal Circuit found that the contractor must prove "that the materials were not kept by the contractor or sold." *Id.* Finding that the contractor had not in fact met this burden, the Court stated, "a [contractor] cannot recover simply by pleading ignorance of the fate of those materials." *Id.* There is no suggestion here that ITB either kept the work-in-process, sold it, or otherwise used the materials to its benefit. Absent fraudulent conduct or conduct grossly in disregard of its contractual obligations, the authorities do not require that all incurred costs and reasonable profit be denied the contractor. *See Best Foam Fabricators,* 38 Fed.Cl. at 640 and cases cited. *See also John Cibinic, Jr. & Ralph C. Nash, Jr., Administration of Government Contracts* 1118 (3d ed. 1995) ("Allowable costs include those costs incurred in producing defective material ... as long as the amount of defective material is not unreasonable.").

---

**6.** ITB has claimed that the inventory's fair market value was zero or, at most, 20 dollars. Pl.'s Complaint No. 22. Mr. Kenneth Davis, an engineer for the Defense Contract Management Com-

We note that our view of the treatment of missing inventory in this case does not dispose of all contested issues. For example, the amount of the fair market value remains in dispute.[6] Other areas of controversy are discussed above at note 1.

### III. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment of Entitlement is GRANTED to the extent that, if plaintiff is otherwise entitled to recovery, calculations of plaintiff's recovery shall reflect the cost of its work-in-process inventory less its fair market value. Plaintiff's Motion for Summary Judgment of Entitlement is otherwise DENIED. Defendant's Cross–Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

mand, suggests that inventory items could have been used in other government contracts in other places. Declaration of Kenneth Davis, App. to Def.'s Opp. at 124–127.